UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-mj-03442 Louis

FILED BY ___TS___ D.C.

*Jul 24, 2023*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

UNITED STATES OF AMERICA

v.

TAKEIA HERDER and
SCHNEEKA PARKER,

    Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)? No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

                              Respectfully submitted,

                              MARKENZY LAPOINTE
                              UNITED STATES ATTORNEY

BY:   */s/ Katherine W. Guthrie*
       Katherine W. Guthrie
       Assistant United States Attorney
       Court ID No. A5502786
       99 Northeast 4th Street
       Miami, Florida 33132-2111
       Tel: 305-961-9117
       Email: Katherine.Guthrie@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| TAKEIA HERDER and SCHNEEKA PARKER, | ) | Case No. 1:23-mj-03442 Louis |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _____July 23, 2023_____ in the county of _____Miami-Dade_____ in the _____Southern_____ District of _____Florida_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 952(a) | Importation of a controlled substance |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

Summer Louis, Special Agent HSI
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by _Face Time_

Date: July 24 2023

*Judge's signature*

City and state: _____Miami, Florida_____   Hon. Lauren F. Louis, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Summer Louis, being duly sworn, hereby depose and state the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI"), since April 2020. I obtained a bachelor's degree in mathematics education and a master's degree in public administration from Florida State University. I have experience working for the federal government in enforcement and investigations since 2015. I have participated in training programs related to the investigation of controlled substances violations and the methods used by traffickers in the importation, distribution, packaging, and concealment of controlled substances. I have participated in the arrests of numerous suspects involved in narcotics trafficking offenses. I have conducted, as well as participated in, numerous drug-related investigations. As a law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, I am empowered by law to conduct investigations of and make arrests for offenses enumerated in Titles 18, 19, 21, 31 and 46 of the United States Code.

2. The information contained in this Affidavit is submitted for the sole purpose of establishing probable cause that, on or about July 23, 2023, Takeia HERDER ("HERDER") and Schneeka Renee PARKER ("PARKER") did knowingly and intentionally import into the United States, from a place outside thereof, a controlled substance, that is, cocaine, in violation of Title 21, United States Code, Section 952(a).

3. Because this Affidavit is being submitted for the limited purpose of establishing probable cause, it does not contain all the information known to me and other law enforcement officers involved in this investigation. The facts and information contained in this Affidavit are based on

my personal knowledge and observations, as well as information received in my official capacity from other individuals, including other law enforcement officers involved in this investigation.

**PROBABLE CAUSE**

4. On or about July 23, 2023, U.S. Customs and Border Protection ("CBP") officers conducted an enforcement operation onboard the MSC Seascape Cruise Ship upon the vessel's arrival at the Port of Miami from Cozumel, Mexico via Grand Cayman, Jamaica, and Bahamas. Officers encountered HERDER and PARKER in their shared cabin. Officers instructed HERDER and PARKER to bring their belongings for a secondary inspection.

5. Law enforcement brought a trained narcotics detection canine to assist in the investigation onboard the vessel. According to the canine handler, when HERDER and PARKER exited their cabin with their belongings, the canine exhibited a change behavior and alerted to the odor of narcotics emanating from the suitcase belonging to PARKER.

6. After the canine alerted to the odor of narcotics, officers escorted HERDER and PARKER to a secondary inspection area at the Port of Miami. HERDER and PARKER each carried her own luggage. HERDER brought a blue colored suitcase, a brown purse, a tan reusable shopping bag, a purple neck pillow, and a bottle of water. PARKER brought a dark colored suitcase and a maroon leather purse.

7. CBP Officers gave Customs Declaration Forms to HERDER and PARKER. HERDER and PARKER claimed ownership of all the belongings with which they were traveling. Officers then searched each individual and her belongings simultaneously in separate areas.

8. During the search of HERDER's belongings, officers discovered a Samsonite dark-colored backpack inside HERDER's luggage. During manual and visual inspections, officers found an anomaly sewed inside the lining of HERDER's backpack. After cutting into the lining of

HERDER's backpack, officers discovered two rectangular foam-covered packages concealed inside the front and back sides of HERDER's backpack. The two packages contained a white powdery substance and had a combined weight of approximately 2.35 kilograms The white powdery substance field-tested positive for cocaine.

9. During the search of PARKER's belongings, officers discovered a dark-colored Samsonite backpack inside PARKER's luggage as well. During manual and visual inspections, officers found an anomaly sewed inside the lining of the backpack. After cutting into the lining of PARKER's backpack, officers discovered two rectangular foam-covered packages concealed inside the front and back sides of PARKER's backpack. The two packages contained a white powdery substance and had a combined weight of approximately 2.40 kilograms. The white powdery substance field-tested positive for cocaine.

10. In total, officers discovered four packages of a white powdery substance—that field-tested positive for cocaine—concealed in two backpacks amongst HERDER's and PARKER's belongings. The substance weighed approximately 4.75 kilograms.

11. Based on my training and experience, the street value of a kilogram of cocaine can range from approximately US $15,000 to as high as US $40,000, depending on the purity of the cocaine and the location of its sale.

12. CBP officers reviewed security camera footage from the cruise ship. Security camera footage from July 16, 2023—the first day of the cruise—shows HERDER and PARKER arriving and checking in to the cruise, each wearing a dark-colored backpack.

13. On July 17, 2023, the cruise stopped in the Bahamas. Security footage shows HERDER and PARKER disembarked from the vessel, each wearing a dark-colored backpack. Footage shows

that when HERDER and PARKER returned to the vessel, each was carrying a dark-colored backpack.

14. On July 18, 2023, the cruise made no stops and remained at sea.

15. On July 19, 2023, the cruise stopped in Jamaica. Security footage shows HERDER and PARKER disembarking from the vessel while carrying the dark-colored backpacks. HERDER and PARKER returned to the vessel separately, each wearing a dark-colored backpack. HERDER and PARKER each returned to their cabin with their dark-colored backpacks. A preliminary review of security camera footage did not show HERDER or PARKER carrying their backpacks again after this date.

16. On July 20, 2023, the cruise stopped in the Bahamas. A preliminary review of security footage did not show HERDER or PARKER disembarking from the vessel on July 20, 2023.

17. On July 21, 2023, the cruise stopped in Mexico. Security footage shows HERDER and PARKER disembarking from the vessel. Neither HERDER nor PARKER is seen carrying a backpack. Instead, they are carrying smaller bags.

18. Law enforcement interviewed HERDER. Post-*Miranda*, HERDER made the following statements:

   a. HERDER invited PARKER, her sister, to join her on the cruise. A friend helped HERDER pay for the cruise.

   b. HERDER and PARKER met up with this same friend when they arrived in Jamaica and went to a restaurant together, along with one other individual.

   c. At one point at the restaurant, HERDER went to use the bathroom, leaving her backpack behind. When HERDER later grabbed her backpack, she noticed it was heavier than she originally remembered.

   d. HERDER denied knowledge of any narcotics in the backpack. HERDER said she was not asked or paid to smuggle narcotics.

19. Law enforcement interviewed PARKER. Post-*Miranda*, PARKER made the following statements:

    a. PARKER's sister HERDER invited her and paid for the cruise.

    b. PARKER and her sister HERDER got off the ship in Jamaica and met up with two friends of HERDER's.

    c. Before PARKER and HERDER returned to the ship, one of HERDER's friends asked PARKER if she wanted a bag to put her towels and other belongings in. PARKER said she did not notice anything suspicious about the bag because she did not see anything inside it. PARKER took the bag and returned to the ship with it.

    d. PARKER denied knowledge of any narcotics in the backpack. PARKER said she was not asked or paid to smuggle narcotics.

20. Law enforcement conducted a border search of HERDER's and PARKER's cellphones. A preliminary review of HERDER's phone revealed multiple WhatsApp voice and video calls as well as messages with a phone number with a Jamaica area code.

21. Additionally, HERDER sent a message two days prior to the cruise to a contact listed in her phone as "Kenny Jamaica," stating that she does not "do shit at the last minute but is cool am done I don't know what u doing but am not doing it no more so what ever u got going on let it stop playing with me and now you not going to pick up the phone." There was no response to this message.

[This Space Intentionally Left Blank]

## CONCLUSION

22. Based on the forgoing, I respectfully submit that there is probable cause to support a criminal complaint against HERDER and PARKER for violations of Title 21, United States Code, Section 952 (importing a controlled substance).

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
SUMMER LOUIS
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS


Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time this  24   day of July 2023.

_____
HONORABLE LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE